UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD ROBERT GILBERT, JR.,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA, *et al.*,

    *Defendants*.

Civil Action No. 23 - 2096 (LLA)

## MEMORANDUM OPINION

Plaintiff Richard Robert Gilbert, Jr., is an inmate in the custody of the Bureau of Prisons ("BOP"). ECF No. 1 ¶ 5. Proceeding pro se, he sues several Defendants for allegedly refusing to provide him with a replacement Social Security card. ECF Nos. 1, 2.[1] Defendants filed a motion to dismiss or, in the alternative, for summary judgment. ECF No. 28. Mr. Gilbert has also filed several of his own motions, including a motion for an order verifying his identity, ECF No. 27, a motion to strike Defendants' reply brief or, in the alternative, for leave to file a sur-reply, ECF No. 33, a motion for a protective order, ECF No. 35, and a motion for judicial notice, ECF No. 38. For the reasons explained below, the court will accept Mr. Gilbert's sur-reply, grant Defendants' motion, and deny the remainder of Mr. Gilbert's motions as moot.

---

[1] Mr. Gilbert amended his complaint, but the "only change is the addition of respondent parties." ECF No. 2, at 2. "[I]n all respects[,] the complaint is identical." *Id.* When he filed the amended complaint, Mr. Gilbert only included an updated case caption and did not attach any of the other pages from the original complaint. Because he clearly intended to incorporate the contents of his original complaint, ECF No. 1, the court will cite to that filing throughout this opinion.

I. **FACTUAL BACKGROUND**

The following facts are drawn from Mr. Gilbert's complaint and the undisputed facts in the record.[2] Because this court liberally construes pro se filings, it may "consider[] supplemental material filed by a pro se litigant in order to clarify the precise claims being urged." *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024) (internal quotation marks omitted) (quoting *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007)).

A. **Statutory Background**

Pursuant to the Social Security Act, 42 U.S.C. § 301 *et seq.*, the Commissioner of the Social Security Administration ("SSA") "shall have full power and authority to make rules and regulations and to establish procedures" to carry out the provisions of the Act, including the evidentiary requirements for individuals requesting Social Security documentation. *Id.* § 405(a). The SSA may "enter[] into agreements with the United States Attorney General, other Federal officials, and State and local welfare agencies" to "carry[] out its responsibilities to assign social security numbers." 20 C.F.R. § 422.106(a).

Because incarcerated individuals "generally do not have access to the types of identity documents required" for ordinary Social Security verification purposes, ECF No. 28, at 6, the SSA and BOP have a Memorandum of Understanding ("MOU") "to establish an effective, secure, and efficient means for each party's field staff to process applications from certain BOP inmates for replacement Social Security number (SSN) cards," ECF No. 28-5, at 1.[3] Pursuant to the MOU,

---

[2] Because Defendants moved, in the alternative, for summary judgment, and because Mr. Gilbert agrees that the "case is ripe for summary judgment," ECF No. 31, at 11, the court will consider Defendants' motion as one for summary judgment.

[3] The MOU is authorized by the Social Security Act, 42 U.S.C. §§ 405, 902, and the Intelligence Reform and Terrorism Prevention Act of 2004, 18 U.S.C. §§ 3624, 4042. ECF No. 28-6, at 1.

2

once an inmate completes an "Application for a Social Security Card" and "Consent for Release of Information" and submits both forms to BOP officials, BOP signs a "Certification of Prison Records" form. ECF No. 28-6, at 3. BOP then mails all three forms to the local SSA field office. *Id.* If the SSA field office accepts the materials, it mails a replacement card to the inmate's BOP facility, and BOP must place the card into the inmate's "Central File." *Id.* at 4-5. Under no circumstances "will SSA send a replacement . . . card directly to an inmate at a BOP institution." *Id.* at 6. For security reasons, the inmate may only view the replacement card "in the presence of BOP staff," and he is not allowed to maintain possession of the card while incarcerated. *Id.* at 4. BOP may only give the replacement card to the inmate upon his release from incarceration. *Id.* at 5.

### B.   Mr. Gilbert's Attempt to Acquire a Replacement Social Security Card

Mr. Gilbert is currently incarcerated at FCI Terre Haute in Terre Haute, Indiana. ECF No. 1 ¶ 5. In September 2022, his sister went to the SSA field office in Bowling Green, Kentucky, to try and obtain a replacement Social Security card for him. *Id.* ¶¶ 35-36. She brought Mr. Gilbert's application for a replacement card, a copy of his government identification card, and a signed consent form for the release of his information. *Id.* ¶ 36. The SSA field office thereafter wrote Mr. Gilbert a letter informing him that he had not provided adequate documentation to receive a replacement card and that it could not accept a power of attorney. ECF No. 1-1, at 13. The office directed him to contact his BOP case manager or the pre-release department at FCI Terre Haute for instructions on how to acquire a replacement card. *Id.*

Mr. Gilbert subsequently mailed a second application for a replacement card directly to the SSA field office in October 2022. *See* ECF No. 1-1, at 18 (explaining that the SSA field office confirmed receipt of Mr. Gilbert's application). In the application, he requested that his replacement card be mailed to his sister, instead of to BOP. *Id.* at 11; ECF No. 28-4 ¶ 7. The SSA field office

3

returned the application packet in November 2022 with a note explaining that "BOP wasn't authorized for release of [the] info[rmation]" and that his attempted application method would improperly result in the replacement card going to his sister. *See* ECF No. 1-1, at 21; *see also* ECF No. 1 ¶¶ 43-44. Mr. Gilbert then submitted a grievance with BOP asking why his replacement card could not be sent to his sister. ECF No. 1-1, at 24. BOP responded that, pursuant to the MOU, an inmate's replacement card could only be sent directly to the inmate's BOP facility. *Id.* BOP further explained that it would not submit the required certification form on his behalf if he intended for the card to go to his sister. *Id.*

Undeterred, Mr. Gilbert submitted yet another application for a replacement card to the SSA field office. ECF No. 1 ¶ 49; ECF No. 1-1, at 26. The SSA field office replied several days later and denied the request, stating: "The SSA cannot process your application at this time. There is an MOU (Memorandum of Understanding) in place with the Terre Haute FBOP. You must use that route to obtain a social security card." ECF No. 1-1, at 28.

In December 2022, Mr. Gilbert sought administrative relief from FCI Terre Haute, arguing that "the process by which [he could] obtain a replacement Social Security card . . . [was] invalid." ECF No. 1-1, at 30. The warden responded and denied the request, explaining that Mr. Gilbert would need to follow the MOU's instructions if he wanted to obtain a replacement card. *Id.* The warden also notified Mr. Gilbert that "[i]f [he was] dissatisfied with this response, [he could] appeal to the [BOP] Regional Director . . . within 20 calendar days of the date of this response." *Id.* Mr. Gilbert did not appeal. ECF No. 28-2 ¶¶ 29-30; ECF No. 28-7 ¶ 7.

Over the course of the next several months, Mr. Gilbert submitted additional requests for a replacement card directly to the SSA field office, all of which were unsuccessful. ECF No. 1 ¶¶ 55-56, 58-62. Despite numerous meetings with BOP staff who have told Mr. Gilbert that he

4

must "follow[] the process as outlined in the MOU," "[Mr. Gilbert continued to] refuse[] to follow the MOU and [to] demand[] that the replacement card be sent to his sister." ECF No. 28-4 ¶¶ 9-10.

## II.     PROCEDURAL HISTORY

In July 2023, Mr. Gilbert sued the United States, BOP, the SSA, the Department of Health and Human Services ("HHS"), and four individuals—"Ben," "R.M.V.," "Rebekka Elisle," and "B. Klink"—under the Freedom of Information Act, 5 U.S.C. § 552, the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, and the Privacy Act, 5 U.S.C. § 552a, based on their alleged failure to provide him with a replacement Social Security card. ECF Nos. 1, 2.[4] In September 2023, he moved for the court to take judicial notice of the SSA's general instructions for applying for a Social Security card (Forms SS-5 and SSA-3288). ECF No. 4.

In November 2023, the court dismissed the individual defendants because claims arising under the relevant statutes "cannot be brought against an individual." ECF No. 7. In December 2023, the case was reassigned to the undersigned. Dec. 14, 2023 Docket Entry. Mr. Gilbert then moved for summary judgment and to compel discovery. ECF Nos. 8, 9. In January 2024, the court denied both motions as premature, as the remaining Defendants had yet to be served with process. Dec. 20, 2023 Minute Order. Mr. Gilbert moved for reconsideration of the denial on the grounds that Defendants had subsequently been served. ECF No. 11. The court denied the motion, explaining: "Notwithstanding proof of service . . . which the Clerk of Court [did

---

[4] Defendants argue, ECF No. 28, at 16, and Mr. Gilbert does not dispute, ECF No. 31, at 19, that HHS plays no role in the administration of Social Security. The SSA "is an independent agency of the federal government." ECF No. 28, at 16. With this understanding, Mr. Gilbert "offers no objection to [HHS's] dismissal." ECF No. 31, at 19. Accordingly, the court will dismiss HHS as a Defendant.

5

not] receive[] [until] January 29, 2024," Defendants still had sixty days from the date of service to file a response to Mr. Gilbert's complaint.  Feb. 7, 2024 Minute Order.

In February 2024, Defendants moved for an extension of time to respond while they attempted to resolve the dispute directly with Mr. Gilbert.  ECF No. 15.  The court granted the motion and gave Defendants until March 21, 2024 to respond.  Feb. 22, 2024 Minute Order.  Before that deadline had passed, Mr. Gilbert moved for entry of default and declaratory judgment.  ECF Nos. 17, 18.  Between March and July 2024, Defendants moved for five additional extensions of time while they continued to try and resolve the dispute by working with Mr. Gilbert to secure a replacement card in accordance with applicable laws and regulations, ECF Nos. 19, 21, 22, 24, 26.  The court granted each extension, Mar. 22, 2024 Minute Order; Apr. 22, 2024 Minute Order; May 23, 2024 Minute Order; June 25, 2024 Minute Order; July 22, 2024 Minute Order, but cautioned Defendants that it "w[ould] look upon further extension requests with disfavor," July 22, 2024 Minute Order.  The final extension gave Defendants until August 5, 2024 to respond to the complaint.  July 22, 2024 Minute Order.  In the interim, Mr. Gilbert filed a second motion for declaratory judgment.  ECF No. 23.

In July 2024, the court denied Mr. Gilbert's motion to take judicial notice, ECF No. 4, and motions for declaratory judgment, ECF Nos. 18, 23, because they each sought the same relief as his complaint, July 22, 2024 Minute Order.  The court also denied his motion for entry of default, ECF No. 17, because Defendants had until August 5, 2024 to respond to the complaint, July 22, 2024 Minute Order.  Also in July, Mr. Gilbert filed a motion for an order "certifying [his] identity."  ECF No. 27.

In August 2024, Defendants filed a motion to dismiss or, in the alternative, for summary judgment.  ECF No. 28.  The court issued a *Fox*/*Neal* order directing Mr. Gilbert to respond to the

6

motion on or before September 17, 2024 and explaining that failure to do so could result in the dismissal of his case. ECF No. 29. Mr. Gilbert filed his opposition in early September 2024, ECF No. 31, and Defendants filed a reply two weeks later, ECF No. 32.

Over the next several months, Mr. Gilbert filed a motion to strike Defendant's reply brief or, in the alternative, for leave to file a sur-reply, ECF No. 33, a motion for a protective order that would enable him to "receive, retain, and hold, of all sort[s], Original documents, Certified, or otherwise" related to the litigation, ECF No. 35, and second motion for judicial notice, ECF No. 38. These motions are fully briefed. ECF Nos. 33 to 38, 40 to 41.

### III.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.*, 452 F.3d 798, 805 (D.C. Cir. 2006)); *see* Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating "the absence of a genuine issue of material fact" in dispute. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party must present specific facts supported by materials in the record that would be admissible at trial and that could enable a reasonable jury to find in its favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Allen v. Johnson*, 795 F.3d 34, 38 (D.C. Cir. 2015) (noting that, on summary judgment, the appropriate inquiry is "whether, on the evidence so viewed, 'a reasonable jury could return a verdict for the nonmoving party'" (quoting *Liberty Lobby*, 477 U.S. at 248)). Because Mr. Gilbert is proceeding pro se, his filings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

## IV.    DISCUSSION

Defendants raise six separate grounds for dismissing Mr. Gilbert's claims, but the court need only address one. Because Mr. Gilbert has not exhausted his administrative remedies, the court will grant summary judgment in favor of Defendants.[5]

Under the Prison Litigation Reform Act, 42 U.S.C. § 1997e *et seq.*, an incarcerated plaintiff cannot bring any federal action with respect to prison conditions until he has exhausted his administrative remedies. *Id.* § 1997e(a).[6] This language is "mandatory" and cannot be excused by a court. *Ross v. Blake*, 578 U.S. 632, 639 (2016). "Proper exhaustion requires that the prisoner complete the administrative review process as defined by the prison grievance process itself." *Plummer v. District of Columbia*, 596 F. Supp. 2d 70, 73 (D.D.C. 2009). As long as an administrative process is "available" to and "capable of use" by the inmate, he must exhaust the process before filing a federal lawsuit. *Ross*, 578 U.S. at 643.

For federal prisoners, BOP maintains an Administrative Remedy Program ("ARP") to redress inmate grievances. 28 C.F.R. §§ 542.10 to 542.19. Under the ARP, an inmate must first

---

[5] The court will deny Mr. Gilbert's request to strike Defendants' reply in support of their motion to dismiss or for summary judgment. ECF No. 33. A party may move to strike a pleading under Federal Rule of Civil Procedure 12(f) if it is "redundant, immaterial, impertinent, or scandalous matter." *Id.* A reply in support of a motion is not a "pleading" under Rule 7(a)(1) through (7), and thus is "not subject to being stricken." *Henok v. Chase Home Fin., LLC*, 925 F. Supp. 2d 46, 52-53 (D.D.C. 2013) (quoting 5C Charles Alan Wright, et al., *Federal Practice & Procedure* § 1380 (3d ed. 2012)). In an exercise of discretion and in light of Mr. Gilbert's pro se status, however, the court will grant his alternative request for leave to file a sur-reply and accordingly will consider ECF No. 33-1.

[6] The parties do not dispute that the MOU is a condition of confinement, and the court agrees. A condition of confinement is "any deprivation that does not affect the fact or duration of a prisoner's" incarceration. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999). This can include "general conditions affecting a prisoner's quality of life[,] such as: the revocation of telephone or mail privileges or the right to purchase items otherwise available to prisoners." *Id.* Because the MOU dictates the conditions under which incarcerated individuals like Mr. Gilbert can obtain a replacement card, the court concludes that it is a condition of confinement.

8

submit an informal resolution request to an official at his BOP facility. *Id.* ¶ 5. If that does not resolve the dispute, the inmate must next present their complaint to his facility's warden. *Id.* The warden must respond within twenty calendar days. 28 C.F.R. § 542.18. If the inmate is not satisfied with the warden's response, he may appeal to BOP's Regional Director within twenty calendar days of receiving the warden's decision. *Id.* § 542.15(a). The Regional Director then has thirty calendar days to respond. *Id.* § 542.18. If the inmate is still unsatisfied, he has thirty calendar days from the date of the Regional Director's decision to appeal to BOP's Office of General Counsel, which has forty days to issue a final determination. *Id.* §§ 542.15(a), 542.18. Appealing to the Office of General Counsel is the last stage of the ARP process. *Id.* § 542.18. An inmate is deemed to have exhausted his administrative remedies only when the Office of General Counsel either responds to the appeal or the deadline for a response has passed. *Id.*

Mr. Gilbert acknowledges that he must exhaust administrative remedies before bringing suit and flatly asserts that he has satisfied this requirement. ECF No. 31, at 10. The court is unconvinced.

Both parties agree that Mr. Gilbert took the first two steps of the ARP process. In November 2022, he sought an informal resolution to his replacement-card dispute. ECF No. 1-1, at 24. When that failed to produce the outcome he wanted, he filed a formal administrative complaint to the warden. ECF No. 1-1, at 30. The warden responded within the allotted time and explained that Mr. Gilbert would need to follow the MOU procedures if he wanted to obtain a replacement card. *Id.* The warden also expressly notified Mr. Gilbert that, if he wanted to pursue his claim further, he would need to file an appeal to the BOP Regional Director within twenty calendar days. *Id.* Mr. Gilbert never appealed the warden's decision. ECF No. 28-2 ¶¶ 29-30; ECF No. 28-7 ¶ 7. He therefore never completed the administrative process.

Aside from flatly asserting that he exhausted his remedies, Mr. Gilbert's only response is that going through the administrative process would have been "futile."  ECF No. 31, at 10.  But "[e]ven if an inmate believes that seeking administrative relief from the prison would be futile," he must still exhaust his remedies before filing suit in federal court.  *Kaemmerling v. Lappin*, 553 F.3d 669, 675 (D.C. Cir. 2008).  The only exception is if administrative remedies are not "available" to the inmate, such that the processes are not "capable of use" or not "accessible."  *Ross*, 578 U.S. at 642.  Mr. Gilbert does not allege or point to any facts in the record indicating that administrative processes were unavailable to him.  To the contrary, he was expressly informed that he could appeal the warden's decision but chose not to.  ECF No. 1-1, at 30; ECF No. 28-2 ¶¶ 29-30; ECF No. 28-7 ¶ 7.

As evidence of his exhaustion efforts, Mr. Gilbert points the court to several exhibits attached to his complaint and opposition brief.  *See* ECF No. 31, at 10 ("This Court can take notice of ( . . . Complaint Exhibits 21, 24, and 27); (FOIA Request Exhibit 31); (General Counsel's Office letter consider [sic] final Admin. Remedy Exhibit 33; and 34 consider [sic] sufficient to exhaust); and all other letters and timed [sic] stamped letters attached as (Exhibits #4-11)[.]").  But these exhibits only consist of his informal resolution requests (Compl. Exs. 21, 24), his lone appeal to the warden (Compl. Ex. 27), a FOIA request that functions outside of the BOP grievance process (Compl. Ex. 31), and a collection of letters that Mr. Gilbert mailed directly to the SSA field office (Compl. Exs. 33-34, Opp. Exs. 4-11).  None of these exhibits show that Mr. Gilbert properly completed BOP's administrative process.  Therefore, his claims are unexhausted and "cannot be brought in [federal] court."  *Jones v. Bock*, 549 U.S. 199, 211 (2007).

**CONCLUSION**

For the foregoing reasons, the court will dismiss HHS as a Defendant, partially grant Mr. Gilbert's motion to strike or, in the alternative, for leave to file his sur-reply, ECF Nos. 33, grant the remaining Defendants' motion for summary judgment, ECF No. 28, and deny Mr. Gilbert's remaining motions as moot, ECF Nos. 27, 35, 38.  A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   March 31, 2025