UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARD ROBERT GILBERT, JR.,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA, *et al.*,

    *Defendants*.

Civil Action No. 23 - 2096 (LLA)

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard Robert Gilbert, Jr., proceeding pro se, is an inmate in the custody of the Bureau of Prisons ("BOP"). ECF No. 1 ¶ 5. As relevant here, he has sued the United States of America, the Social Security Administration ("SSA"), and BOP for allegedly refusing to provide him with a replacement Social Security card. ECF Nos. 1, 2.[1] In March 2025, this court granted Defendants' summary judgment motion and denied Mr. Gilbert's pending motions as moot. ECF Nos. 42, 43. Mr. Gilbert has filed a motion to alter the judgment, ECF No. 46, which is fully briefed, ECF Nos. 46, 47, 49 to 51. For the reasons explained below, the court will deny Mr. Gilbert's motion.

---

[1] Mr. Gilbert amended his complaint, but the "only change is the addition of respondent parties." ECF No. 2, at 2. "[I]n all respects[,] the complaint is identical." *Id.* When he filed the amended complaint, Mr. Gilbert only included an updated case caption and did not attach any of the other pages from the original complaint. Because he clearly intended to incorporate the contents of his original complaint, ECF No. 1, the court will cite to that filing throughout this opinion.

I.  FACTUAL BACKGROUND

The court recounts the statutory and factual background from its memorandum opinion, in which it liberally construed Mr. Gilbert's filings and considered all supplemental material he provided to "clarify the precise claims being urged." ECF No. 42, at 2 (quoting *Spence v. U.S. Dep't of Veterans Affs.*, 109 F.4th 531, 538 (D.C. Cir. 2024)).

A.  Statutory Background

Pursuant to the Social Security Act, 42 U.S.C. § 301 *et seq.*, the SSA Commissioner "shall have full power and authority to make rules and regulations and to establish procedures" to carry out the provisions of the Act, including the evidentiary requirements for individuals requesting Social Security documentation. *Id.* § 405(a). The SSA may "enter[] into agreements with the United States Attorney General, other Federal officials, and State and local welfare agencies" to "carry[] out its responsibilities to assign social security numbers." 20 C.F.R. § 422.106(a) (2025).

Because incarcerated individuals "generally do not have access to the types of identity documents required" for ordinary Social Security verification purposes, ECF No. 28-1, at 6, the SSA and BOP have a Memorandum of Understanding ("MOU") "to establish an effective, secure, and efficient means for each party's field staff to process applications from certain BOP inmates for replacement Social Security number (SSN) cards," ECF No. 28-6, at 1.[2] Pursuant to the MOU, once an inmate completes an "Application for a Social Security Card" and "Consent for Release of Information" and submits both forms to BOP officials, BOP signs a "Certification of Prison Records" form. *Id.* at 3. BOP then mails all three forms to the local SSA field office. *Id.* at 4. If

---

[2] The MOU is authorized by the Social Security Act, 42 U.S.C. §§ 405, 902, and the Intelligence Reform and Terrorism Prevention Act of 2004, 18 U.S.C. §§ 3624, 4042. ECF No. 28-6, at 1.

the SSA field office accepts the materials, it mails a replacement card to the inmate's BOP facility, and BOP must place the card into the inmate's "Central File." *Id.* at 4-5.  Under the MOU, there are no circumstances under which "SSA [will] send a replacement . . . card directly to an inmate at a BOP institution." *Id.* at 6.  For security reasons, the inmate may only view the replacement card "in the presence of BOP staff," and he is not allowed to maintain possession of the card while incarcerated. *Id.* at 4.  BOP may only give the replacement card to the inmate upon his release from incarceration. *Id.* at 5.

### B. Mr. Gilbert's Attempt to Acquire a Replacement Social Security Card

When Mr. Gilbert filed suit, he was incarcerated at FCI Terre Haute in Terre Haute, Indiana.  ECF No. 1 ¶ 5.  He is now incarcerated at FCI Cumberland in Cumberland, Maryland.  ECF No. 49, at 3.  In September 2022, his sister went to the SSA field office in Bowling Green, Kentucky, to try and obtain a replacement Social Security card for him.  ECF No. 1 ¶¶ 35-36.  She brought Mr. Gilbert's application for a replacement card, a copy of his government identification card, and a signed consent form for the release of his information. *Id.* ¶ 36.  The SSA field office thereafter wrote Mr. Gilbert a letter informing him that he had not provided adequate documentation to receive a replacement card and that it could not accept a power of attorney.  ECF No. 1-1, at 13.[3]  The office directed him to contact his BOP case manager or the pre-release department at FCI Terre Haute for instructions on how to acquire a replacement card. *Id.*

Mr. Gilbert subsequently mailed a second application for a replacement card directly to the SSA field office in October 2022. *See id.* at 18 (explaining that the SSA field office confirmed

---

[3] The citations to ECF Nos. 1-1 refer to the ECF-generated page numbers at the top of each page, rather than any internal pagination.

receipt of Mr. Gilbert's application). In the application, he requested that his replacement card be mailed to his sister, instead of to BOP. *Id.* at 11; ECF No. 28-4 ¶ 7. The SSA field office returned the application packet in November 2022 with a note explaining that "BOP wasn't authorized for release of [the] info[rmation]" and that his attempted application method would improperly result in the replacement card going to his sister. ECF No. 1-1, at 21; *see also* ECF No. 1 ¶¶ 43-44. Mr. Gilbert then submitted a grievance with BOP asking why his replacement card could not be sent to his sister. ECF No. 1-1, at 24. BOP responded that, pursuant to the MOU, an inmate's replacement card could only be sent directly to the inmate's BOP facility. *Id.* BOP further explained that it would not submit the required certification form on his behalf if he intended for the card to go to his sister. *Id.*

Undeterred, Mr. Gilbert submitted yet another application for a replacement card to the SSA field office. ECF No. 1 ¶ 49; ECF No. 1-1, at 26. The SSA field office replied several days later and denied the request, stating: "The SSA cannot process your application at this time. There is an MOU (Memorandum of Understanding) in place with the Terre Haute FBOP. You must use that route to obtain a social security card." ECF No. 1-1, at 28.

In December 2022, Mr. Gilbert sought administrative relief from FCI Terre Haute, arguing that "the process by which [he could] obtain a replacement Social Security card . . . [was] invalid." *Id.* at 30. The warden responded and denied the request, explaining that Mr. Gilbert would need to follow the MOU's instructions if he wanted to obtain a replacement card. *Id.* The warden also notified Mr. Gilbert that "[i]f [he was] dissatisfied with this response, [he could] appeal to the [BOP] Regional Director . . . within 20 calendar days of the date of this response." *Id.* Mr. Gilbert did not appeal. ECF No. 28-2 ¶¶ 29-30; ECF No. 28-7 ¶¶ 7-9.

Over the course of the next several months, Mr. Gilbert submitted additional requests for a replacement card directly to the SSA field office, all of which were unsuccessful. ECF No. 1 ¶¶ 55-56, 58-62. Despite numerous meetings with BOP staff who have told Mr. Gilbert that he must "follow[] the process as outlined in the MOU," "[Mr. Gilbert continued to] refuse[] to follow the MOU and [to] demand[] that the replacement card be sent to his sister." ECF No. 28-4 ¶¶ 9-10.

## II.   PROCEDURAL HISTORY

In July 2023, Mr. Gilbert sued the United States, BOP, the SSA, the Department of Health and Human Services ("HHS"), and four individuals—"Ben," "R.M.V.," "Rebekka Elisle," and "B. Klink"—under the Fifth Amendment's Due Process Clause, the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*, the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, based on their alleged failure to provide him with a replacement Social Security card. ECF Nos. 1, 2. The court *sua sponte* dismissed all allegations against the individual defendants because claims arising under the relevant statutes "cannot be brought against an individual." ECF No. 7. The case was then reassigned to the undersigned. Dec. 14, 2023 Docket Entry.

In July 2024, Mr. Gilbert filed a motion for an order "certifying [his] identity." ECF No. 27. A month later—after Mr. Gilbert had filed various premature discovery motions and requests for relief[4]—Defendants filed a motion to dismiss or, in the alternative, for summary

---

[4] The court dismissed Mr. Gilbert's motions for summary judgment and to compel discovery, ECF Nos. 8, 9, as premature, Jan. 3, 2024 Minute Order. Mr. Gilbert moved for reconsideration, ECF No. 11, which the court denied because Defendants' time to respond to the complaint had not yet expired, Feb. 7, 2024 Minute Order. The court granted Defendants several extensions of time while they tried to resolve Mr. Gilbert's request for a replacement card. Mar. 22, 2024 Minute Order; Apr. 22, 2024 Minute Order; May 23, 2024 Minute Order; June 25, 2024 Minute Order;

(*continued on next page*)

judgment. ECF No. 28. The court issued a *Fox*/*Neal* order directing Mr. Gilbert to respond to the motion on or before September 17, 2024 and explaining that failure to do so could result in the dismissal of his case. ECF No. 29. Mr. Gilbert filed his opposition in early September 2024, ECF No. 31, and Defendants filed a reply two weeks later, ECF No. 32. Over the next several months, Mr. Gilbert filed a motion to strike Defendant's reply brief or, in the alternative, for leave to file a surreply, ECF No. 33; a motion for a protective order that would enable him to "receive, retain, and hold, of all sort[s], Original documents, Certified, or otherwise" related to the litigation, ECF No. 35; and a second motion for judicial notice, ECF No. 38.

After the motions were fully briefed, ECF Nos. 33 to 38, 40, 41, the court issued a memorandum opinion, ECF No. 42, and an order pursuant to Federal Rule of Civil Procedure 58, ECF No. 43.[5] It also dismissed all claims against HHS, ECF No. 43, because, as Defendants argued, ECF No. 28, at 16, and Mr. Gilbert did not dispute, ECF No. 31, at 19, HHS plays no role in the administration of Social Security and the SSA "is an independent agency of the federal government," ECF No. 28-1, at 16. The court then granted summary judgment to Defendants because Mr. Gilbert had not exhausted his administrative remedies. ECF No. 42, at 8-11. Mr. Gilbert acknowledged his obligation to exhaust all administrative remedies, but "flatly assert[ed] that he ha[d] satisfied [that] requirement"—a claim squarely contradicted by the record.

---

July 22, 2024 Minute Order. While waiting for Defendants to respond, Mr. Gilbert moved for entry of default and declaratory judgment. ECF Nos. 17, 18, 23. The court denied Mr. Gilbert's motion to take judicial notice, ECF No. 4, and motions for declaratory judgment, ECF Nos. 18, 23, because they each sought the same relief as his complaint, July 22, 2024 Minute Order. And the court denied Mr. Gilbert's request for default, ECF No. 17, as premature because Defendants had time remaining to respond to the complaint, July 22, 2024 Minute Order.

[5] The court's order also granted Mr. Gilbert's motion to file a surreply. ECF No. 43.

*Id.* at 9.  Finally, the court denied Mr. Gilbert's remaining motions, ECF Nos. 27, 35, 38, as moot, ECF No. 43.

### III.     LEGAL STANDARDS

#### A.     Federal Rule of Civil Procedure 59(e)

"Under Rule 59(e), the court may grant a motion to amend or alter a judgment under three circumstances only: (1) if there is an 'intervening change of controlling law'; (2) if new evidence becomes available; or (3) if the judgment should be amended in order to 'correct a clear error or prevent manifest injustice.'"  *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 217 (D.C. Cir. 2018) (quoting *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam)).  Rule 59(e) motions are "generally disfavored, and . . . reserved for 'extraordinary circumstances,'" *Dage v. Johnson*, 537 F. Supp. 2d 43, 48 (D.D.C. 2008) (quoting *Niedermeier v. Off. of Max S. Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)), not for "unhappy litigant[s] 'to reargue facts and theories upon which a court has already ruled,'" *id.* (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)).  Specifically, a party may not "relitigate old matters" or "raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Schoenman v. Fed. Bureau of Investigation*, 857 F. Supp. 2d 76, 80 (D.D.C. 2012) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).  Instead, the moving party has the burden to establish the "extraordinary" grounds warranting an alteration to or amendment of a final judgment.  *Id.* (quoting *Niedermeier*, 153 F. Supp. 2d at 28).

A litigant must file any Rule 59(e) motion within twenty-eight days "after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The court has no authority to extend this time and consider an untimely Rule 59(e) request.  *Id.* R. 6(b)(2); *see Banister v. Davis*, 590 U.S. 504, 507-08 (2020); *Oladokun v. Corr. Treatment Facility*, 309 F.R.D. 94, 98 (D.D.C. 2015).  The bar on extending

the Rule 59(e) deadline applies equally to pro se plaintiffs because "litigants who proceed without counsel are not excused from following procedural rules."  *Untalasco v. Lockheed Martin Corp.*, 249 F. Supp. 3d 318, 324 (D.D.C. 2017) (quoting *Oladokun*, 309 F.R.D. at 98).  However, "[a]n untimely motion under Rule 59(e) may be considered as a motion under Rule 60(b) if it states grounds for relief under the latter rule."  *Comput. Pros. for Soc. Resp. v. U.S. Secret Serv.*, 72 F.3d 897, 903 (D.C. Cir. 1996); *see Hall v. Cent. Intel. Agency*, 437 F.3d 94, 98 (D.C. Cir. 2006) ("As the [untimely Rule 59(e)] motion raised grounds cognizable under . . . Rule 60(b), the district court properly addressed the motion as one under that rule.").

### B.    Federal Rule of Civil Procedure 60(b)

Under Rule 60(b), the court may "relieve a party . . . from a final judgment" for one of six reasons:  (1) "mistake, inadvertence, surprise, or excusable neglect"; (2) "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)"; (3) "fraud . . . , misrepresentation, or misconduct by an opposing party"; (4) "the judgment is void"; (5) "the judgment has been satisfied, released, or discharged," or was based on similar grounds, or applying it would "no longer [be] equitable"; or (6) "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(1)-(6).  Two grounds are potentially applicable here: Rule 60(b)(1) and Rule 60(b)(6).  "In considering a[ny] Rule 60(b) motion, the district court 'must strike a "delicate balance between the sanctity of final judgments . . . and the incessant command of a court's conscience that justice be done in light of *all* the facts."'"  *People for the Ethical Treatment of Animals v. U.S. Dep't of Health & Hum. Servs.*, 901 F.3d 343, 354-55 (D.C. Cir. 2018) ("*PETA*") (second alteration in original) (quoting *Twelve John Does v. District of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988)).  A party seeking relief from judgment must file his Rule 60(b) motion "within a reasonable time," which, for the first three grounds, is "no

more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

The Supreme Court recently determined that "Rule 60(b)(1) covers all mistakes of law made by a judge." *Kemp v. United States*, 596 U.S. 528, 534 (2022). In doing so, the Court "overruled the precedent of this Circuit [and held] that *any* legal error, including those that are not 'obvious' or 'manifestly erroneous,' may constitute 'mistake'" under Rule 60(b)(1). *Woods v. District of Columbia*, No. 20-CV-782, 2022 WL 17989326, at *3 (D.D.C. Dec. 29, 2022). But it left in place "the general rule of this jurisdiction that motions for reconsideration are still 'disfavored' and granting them should be 'unusual.'" *Id.* (quoting *Walsh v. Hagee*, 10 F. Supp. 3d 15, 18 (D.D.C. 2013)).

Rule 60(b)(6) "provides only grounds for relief not already covered by the preceding five [Rule 60(b)] paragraphs," and is "available only in narrow circumstances." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025). While a court retains discretion to grant a Rule 60(b)(6) motion, *Jones v. U.S. Dep't of Just.*, 315 F. Supp. 3d 278, 279 (D.D.C. 2018), it should do so "sparingly" and only under "extraordinary circumstances," *PETA*, 901 F.3d at 355 (first quoting *Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980); then quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)). The party seeking relief "bears the threshold burden of proving that a 'significant change' in legal or factual circumstances 'warrants revision of the [court's] decree.'" *Salazar ex rel. Salazar v. District of Columbia*, 896 F.3d 489, 492 (D.C. Cir. 2018) (quoting *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383 (1992)).

## IV.   DISCUSSION

### A.   Mr. Gilbert's Motion Is Untimely Under Rule 59(e)

Mr. Gilbert's Rule 59(e) motion is time-barred. The court granted summary judgment to Defendants and entered its final judgment on March 31, 2025. ECF No. 43. Rule 59(e)'s twenty-eight-day clock began running the next day, making any motion to alter or amend the judgment due on April 28, 2025. *See Banister*, 590 U.S. at 507 (noting "time to [file Rule 59(e) motion] is short—28 days from entry of the judgment"). Even under the "'prison mailbox rule'"— according to which an incarcerated person's "papers are considered filed as of the date they are submitted for mailing to prison authorities," *Hart v. U.S. Dep't of Just.*, 648 F. Supp. 2d 113, 115 n.3 (D.D.C. 2009) (quoting *Houston v. Lack*, 487 U.S. 266, 270-71 (1988))—Mr. Gilbert appears to have missed the deadline by three days.

On May 1, 2025, he certified that he hand-delivered his Rule 59(e) motion to prison staff. ECF No. 46, at 8; ECF No. 46-1, at 1. Because he did so after the April 28 filing cutoff, his motion is untimely and the court lacks authority to grant Rule 59(e) relief or extend the deadline. *Banister*, 590 U.S. at 507-08 (explaining that operation of Rule 6(b)(2) means there is "no possibility of an extension"); *Oladokun*, 309 F.R.D. at 98. The Rule 59(e) motion does, however, allege a defect in the court's legal reasoning that, if Mr. Gilbert is correct, would justify relief under Rule 60(b). *See* ECF No. 46, at 1 (arguing that the court applied "the incorrect rubric of law"); Fed. R. Civ. P. 60(b)(1) (granting court discretion to provide relief from judgment for any "mistake"); *Kemp*, 596 U.S. at 534 (holding that a court's legal errors are "mistakes" under Rule 60(b)(1)). It also satisfies the timing requirements of Rule 60(c)(1). The court will therefore construe Mr. Gilbert's

10

motion to seek relief from judgment pursuant to Rule 60(b)(1).[6] *Comput. Pros. for Soc. Resp.*, 72 F.3d at 903.

## B. The Motion Fails to Meet Rule 60(b)'s Requirements

Mr. Gilbert contends that the court erred when it held that he failed to administratively exhaust his remedies. He first argues that BOP's administrative remedies were "final[] and futil[e]" and thus functionally unavailable to him, such that any failure to exhaust should be excused. ECF No. 46, at 2-4, 6-7. Alternatively, he argues that the MOU between BOP and SSA—which imposes a process on incarcerated individuals who seek a replacement Social Security card—is unlawful and therefore not a "condition of confinement" that would trigger the administrative exhaustion requirements of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.* *See* ECF No. 46, at 4-5. While a defect in the court's legal reasoning could justify granting relief under Rule 60(b)(1), *Kemp*, 596 U.S. at 534, Mr. Gilbert has not identified any such error, let alone one that warrants upending the court's final judgment.[7]

---

[6] Because Rule 60(b)(1) encompasses a judge's legal errors, Mr. Gilbert cannot obtain relief under Rule 60(b)(6)'s catch-all provision. *See BLOM Bank SAL*, 605 U.S. at 211 ("[W]e have repeatedly held that relief under Rule 60(b)(6) is available 'only when Rules 60(b)(1) through (b)(5) are inapplicable.'" (quoting *Kemp*, 596 U.S. at 533)).

[7] For this reason alone, the court would deny Mr. Gilbert's Rule 59(e) motion even if it were timely. Mr. Gilbert has failed to "demonstrate that [his] motion is necessary to correct *manifest* errors of law . . . upon which the judgment [was] based." 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (3d ed. 2025) (emphasis added). And while the court is sympathetic to Mr. Gilbert's concerted but unsuccessful efforts to obtain a replacement card, Mr. Gilbert has not identified any "manifest injustice"—as the term is construed by precedent—that amending the judgment would prevent. *See Leidos*, 881 F.3d at 217. In any event, Mr. Gilbert's Rule 59(e) motion impermissibly attempts to "relitigate old matters" and "raise arguments . . . that [were or] could have been raised prior to the entry of judgment." *Exxon Shipping Co.*, 554 U.S. at 485 n.5 (quoting 11 Charles Alan Wright et al., *Federal Practice and Procedure* § 2810.1 (2d ed. 1995)).

Simply put, both of Mr. Gilbert's arguments lack merit. Consider his first argument that his failure to exhaust should be excused. The PLRA demands that an incarcerated plaintiff exhaust all "available" administrative remedies before pursuing any "action . . . with respect to prison conditions." 42 U.S.C. § 1997e(a). For federal prisoners, that means completing BOP's Administrative Remedy Program ("ARP"), 28 C.F.R. §§ 542.10 to 542.19, which involves an escalating series of requests for relief—submitting an informal resolution request to a BOP facility, *id.* § 542.13, appealing the warden's response to BOP's Regional Director, *id.* § 542.15(a), appealing the Regional Director's decision to BOP's Office of General Counsel, *id.* §§ 542.15(a), 542.18, and receiving the Office of General Counsel's decision or receiving no decision before the deadline passes, *id.* § 542.18—before the prisoner may file suit.

To cast this administrative process as unavailable to him, Mr. Gilbert relies on *Ross v. Blake*, 578 U.S. 632 (2016) and cites Justice Breyer's concurrences in *Carr v. Saul*, 593 U.S. 83, 97 (2021); *Ross*, 578 U.S. at 649-50; and *Woodford v. Ngo*, 548 U.S. 81, 103-04 (2006). ECF No. 46, at 2-4. Neither binding precedent nor Justice Breyer's view of exhaustion vindicates Mr. Gilbert's effort to avoid complying with the PLRA. In *Ross*, the Court rejected a judicially crafted exception to the PLRA's exhaustion requirement, according to which an incarcerated plaintiff's failure to exhaust could be "excused" under "special circumstances." 578 U.S. at 637-42. The *Ross* Court did, however, recognize that Section 1997e(a) creates a textual limitation by requiring plaintiffs to exhaust only "available" administrative remedies. "[A]s relevant here[,] three kinds of circumstances" might exist in which an administrative remedy is not available: (1) a procedure "operates as a simple dead end" because "officers [are] unable or consistently unwilling to provide any relief"; (2) a scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking

advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 642-44.

Despite Mr. Gilbert's blanket assertion that, in his case, the ARP falls "squarely into these exceptions," ECF No. 46, at 4, he provides no evidence that any applies. Mr. Gilbert does not establish that BOP lacks the ability to adjudicate his grievance or is unwilling to do so. *See id.* at 6-7. Nor does he maintain that the procedures are so incoherent that he could not "discern [how to] navigate [them]." *Ross*, 578 U.S. at 644. And he never claims that BOP maliciously "thwart[ed]" him from completing the grievance process. *Id.* Instead, Mr. Gilbert contends that the ARP was "final[] and futil[e]"—final because BOP refused to "deviate from the MOU" and futile because BOP's position "had no basis in law." ECF No. 46, at 6. But this argument confuses the availability of administrative relief for the likelihood he would prevail. What matters for exhaustion purposes is whether the ARP was "*capable* of affording" Mr. Gilbert relief, not whether BOP officials were likely to agree with him on the merits of his claim. *Savage v. U.S. Dep't of Just.*, 91 F.4th 480, 484 (D.C. Cir. 2024) (emphasis added).

The ARP plainly offered Mr. Gilbert the prospect of relief because BOP, the party administering the scheme, can "propose to modify and/or amend th[e] MOU at any time." ECF No. 28-6, at 7; *see Savage*, 91 F.4th at 484 (holding that the ARP was capable of providing relief because it "ends with review by the Department of Justice, which has the authority to modify or to rescind the [challenged procedure]"). Mr. Gilbert's case is thus unlike *Kaemmerling v. Lappin*, 553 F.3d 669 (D.C. Cir. 2008), where the Court determined that the grievance process was unavailable because federal law commanded BOP to follow the challenged procedure and BOP "could not articulate a single possible way the prison's administrative system could provide relief," *id.* at 675-76. Without addressing the MOU's terms and the possibility of modification,

13

Mr. Gilbert has not shown that "BOP *cannot* take any action at all in response to [his] complaint." *Id.* at 676 (emphasis added). In effect, his argument about the availability of an administrative remedy merely repackages his earlier one that following the ARP would have been "unlikely to resolve" his request for a replacement card. *Id.* The court previously considered and rejected that challenge, ECF No. 42, at 10 (explaining that "[Mr. Gilbert] was expressly informed that he could appeal the warden's decision but chose not to"), and for good reason: failing to "complete the ARP process" when BOP "'ha[d] authority to take some responsive action'" means that "the PLRA bars his suit." *Savage*, 91 F.4th at 484-85 (alteration in original) (quoting *Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001)).

Nor does Mr. Gilbert fare better by pointing to Justice Breyer's concurrences in PLRA exhaustion cases. Justice Breyer would have imported into the PLRA context the "well-established exceptions to exhaustion" from other administrative law cases. *Woodford*, 548 U.S. at 103 (Breyer, J., concurring). Under that view, a plaintiff's failure to exhaust may be excused when, for example, exhaustion would be futile or present a hardship, or when the administrative process is inadequate. *Id.* That view, however, runs headlong into binding Supreme Court and D.C. Circuit precedent, both of which establish that an incarcerated plaintiff must exhaust the available administrative process even when he believes that seeking relief would be "futile." *Booth*, 532 U.S at 741 n.6 ("[W]e will not read futility or other exceptions into [PLRA] statutory exhaustion requirements where Congress has provided otherwise."); *Kaemmerling*, 553 F.3d at 675 (acknowledging that *Booth* foreclosed any futility exception).

Mr. Gilbert's second theory of error in the court's legal reasoning—that the MOU's purported unlawfulness eliminates the exhaustion requirement—can be dispatched with ease. In Mr. Gilbert's view, Defendants cannot "[i]nvoke the BOP's [four-]step [ARP] process" because

14

the MOU is unlawful.  ECF No. 46, at 5.  That logic confuses the merits of Mr. Gilbert's argument—his challenge to the MOU procedures—with the threshold exhaustion requirement—that he must follow the ARP.  Put differently, Mr. Gilbert needed to complete every step of BOP's grievance process before he could challenge the MOU in federal court.  And whether the MOU is "proper and lawful," ECF No. 46, at 5, has no bearing on whether Mr. Gibert could first pursue that claim before BOP officials to satisfy the PLRA.

At bottom, Mr. Gilbert offers no ground on which the court can conclude that he administratively exhausted his remedies with BOP before filing this action in federal court.  *See Rowe v. PChange LLC*, No. 22-CV-3098, 2025 WL 2803859, at *3 (D.D.C. Oct. 2, 2025) (denying Rule 60(b)(1) relief because court's original reasoning was correct); *Masek v. United States*, No. 22-CV-3574, 2024 WL 4144110, at *4 (D.D.C. Sep. 11, 2024) (explaining that even if the court construed a motion as invoking Rule 60(b)(1), the plaintiff "d[id] not show any errors in the [c]ourt's reasoning" and was not entitled to relief); *United States v. Daniel*, No. 17-CR-233-5, 2022 WL 17719570, at *2-3 (D.D.C. Dec. 15, 2022) (denying Rule 60(b)(1) motion because court did not err in applying applicable precedent); *cf. Triantos v. Guaetta & Benson*, LLC, 52 F.4th 440, 445-47 (2d Cir. 2022) (finding that the district court erred in denying a Rule 60(b) motion for relief from sanctions where "the procedural requirements of Rule 11 [had not been] satisfied").  The court's previous determination that Mr. Gilbert had failed to exhaust his administrative remedies as required by the PLRA remains correct; accordingly, the court will deny Mr. Gilbert's motion to the extent that it is construed as one seeking relief from judgment under Rule 60(b).

## V. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mr. Gilbert's Motion to Alter Judgment, ECF No. 46, is **DENIED**, and his Motion for Evidentiary Hearing, ECF No. 52, and Motion to Clarify, ECF No. 53, are **DENIED** as moot.

**SO ORDERED.**

_____
LOREN L. ALIKHAN
United States District Judge

Date:   November 21, 2025